UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHAEL A. CHIRCO and
DOMINIC MOCERI,

                Plaintiffs,                               CASE NO. 02-73188

vs.                                       HONORABLE PAUL D. BORMAN
                                            HONORABLE STEVEN D. PEPE

GATEWAY OAKS, LLC; ARROW
BUILDING CO., INC.; THE DESIGN GROUP
LLC; N&D DEVELOPERS, LLC; M.C.S.
ASSOCIATES, INC.; SALVATORE
SARAFINO; JOSEPH P. D'ANGELO; M.C.S.
ASSOCIATES, INC.; JIM JONES; AND
CALVIN HALL, INDIVIDUALLY AND D/B/A
CALVIN HALL AND ASSOCIATES,

                Defendants.
_____/


**OPINION AND ORDER DENYING DEFENDANTS' MOTIONS FOR ATTORNEY FEES**
**(DKT. #216, #218, #219, #221, #236, #238)**

      On August 26, 2005, Judge Borman entered an order granting Defendants' motions for

summary judgement in this case alleging copyright infringement and entered a judgment in favor

of Defendants (Dkt. #214 & #215). Defendants subsequently filed motions pursuant to Fed. R.

Civ. P. 54(d)(2)(A) and 17 U.S.C. § 505 for attorney fees and costs as prevailing parties.[1] These

motions was referred to the undersigned for hearing and determination pursuant to 28 U.S.C. §

---

      [1] On January 10, 2007, Judge Borman entered a stipulated order of dismissal between
Plaintiffs and Defendant, The Design Group, LLC, with prejudice and without the payment of
fees or costs to or by any party (Dkt. #261). Defendant's, The Design Group, LLC, motion for
attorney fees and costs (Dkt. #218) is thereby rendered moot and is hereby **DENIED.**

1

636 (b)(1)(A) (Dkt. #222), and a hearing was held on October 26, 2006.[2]  Following the hearing,

the parties submitted numerous supplemental briefs, notices and statements with the latest

submission occurring on January 11, 2007.  For the reasons stated below, **IT IS ORDERED** that

Defendants' motions are **DENIED**.

## I.    FACTUAL BACKGROUND

On August 2, 2002, Michael A. Chirco and Dominic Moceri (collectively "Plaintiffs")

filed this action against Gateway Oaks, L.L.C. ("Gateway"), Arrow Building Co., Inc.

("Arrow"), The Design Group, L.L.C. ("Design"), N & D Developers, L.L.C. ("N & D"), Joseph

D'Angelo ("D'Angelo"), Salvatore Sarafano ("Sarafano"), M.C.S. Associates, Inc. ("M.C.S."),

Jim Jones ("Jones"), and Calvin Hall individually and d/b/a Calvin Hall and Associates ("Hall")

(collectively "Defendants"), alleging copyright infringement pursuant to 17 U.S.C. § 101 et seq.

Plaintiffs are in the business of developing, leasing and selling real estate, including

---

[2] On March 14, 2007, Judge Borman referred Defendants' renewed motions for attorney fees (Dkt. #265).  In effect, these motions seek largely to reinstate Defendants' previously filed motions for attorney fees and costs which were stayed pending the Court's determination of Plaintiff's motion for reconsideration (Dkt. #232).  On July 21, 2006, Judge Borman denied Plaintiff's motion (Dkt. #234).

In Defendant Gateway's motion, it states that Gateway moves to "reinstate their September 9, 2005, Motion for Attorney Fees and Costs" (Dkt. #236).  In addition, the motion updates their total costs and attorney fees claimed.  To summarize, Gateway's September 9, 2005, motion sought to seek reimbursement of $743, 508.78.  Since then, Gateway claims an additional $18, 697.80 has been incurred by the Firm of Warn, Hoffman, Miller & LaLone.  In addition, they claim $12, 136 has been incurred by the Firm of Harness, Dickey & Pierce.  Thus, in total, Gateway seeks reimbursement of $774, 341.58.

Similarly, in the Hall Defendants motion, they request that "the Court consider their previous Motion for Attorney Fees and Costs" (Dkt. #238).  In addition, the motion also updates their total costs and attorney fees claimed.  The Hall Defendants' September 9, 2005 Motion sought to recover attorney fees, through August 31, 2005, of $34, 184.75 and costs in the amount of $921.05.  Since August 31, 2005, the Hall Defendants claim they have incurred an additional $3,217.50 in attorneys' fees.  Thus, in total, the Hall Defendants seek reimbursement of $37,402.25 in attorney fees.

condominiums, apartments and single family homes, in the Detroit metropolitan area, specifically in Oakland and Macomb County (Compl. at ¶ 15-16).

Plaintiffs have previously worked with a third party architect, Ronald E. Mayotte & Associates ("Mayotte"), to create technical architectural plans, and Plaintiffs have constructed apartments/condominiums in accordance with these plans (*Id.* at ¶ 17-18). Specifically, Mayotte and Plaintiffs originally collaborated to create architectural plans for an apartment complex commonly known as the Manors at Knollwood ("Knollwood") in Macomb County, Michigan (*Id.* at ¶ 19). In 1997, Mayotte obtained copyright registrations for both the Knollwood architectural plans ("Knollwood plans"), U.S. Copyright Registration No. VAu 356-238, and the Knollwood architectural buildings ("Knollwood buildings"), U.S. Copyright Registration No. VAu 356-237 (*Id.* at Ex. A).[3]

Plaintiffs and Mayotte subsequently collaborated to develop architectural plans for a condominium project that is commonly known as Aberdeen Village ("Aberdeen"), located in Sterling Heights, Michigan (*Id.* at ¶ 16, 18). Mayotte obtained copyright registrations for both the Aberdeen architectural plans ("Aberdeen plans"), U.S. Copyright Registration No. VAu 356-236, and the Aberdeen architectural buildings ("Aberdeen buildings"), U.S. Copyright Registration No. VAu 356-235 (*Id.* at Ex. A). Plaintiffs allege that copyright law protects the

---

[3] In an earlier case involving different defendants, Plaintiffs conceded that the Knollwood buildings' copyright registration was invalid because construction of the Knollwood buildings began in late 1988, before the enactment of the Architectural Works Copyright Protection Act, Pub. L. No. 101-650, Sec. 701, 104 Stat. 5089, which only applies to architectural works that were created on or after December, 1, 1990, its date of enactment. *See Chirco v. Hampton Ridge*, L.L.C., No. 01-72015 (E.D. Mich Aug. 31, 2001) (Roberts, J.); 1 MELVILLE B. NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHT § 2.20 (2003) (footnotes omitted).

3

Aberdeen plans and buildings as derivatives of the copyrighted Knollwood plans (Compl. at

¶ 18-19).[4]

According to the affidavit of Charles F. Merz ("Merz"), Plaintiffs' expert, the Knollwood

plans and the derivative Aberdeen plans and buildings contain several components that, when

combined in the manner set forth in the plans and buildings, create an original arrangement of

space:

> 8. The Aberdeen plans describe a unique twelve unit residential building. There are
> four units on the first floor as well as two rows of six single car garages on the first
> floor one at each end of the building. There are eight units on the second floor, of
> which 4 are over the garages. Each of the four second floor units which are
> constructed over a garage are placed on three garages, which allows the building to
> be built as four distinct quadrangles with fire rated walls separating each quadrangle.
> Pursuant to the unique plan, each of the twelve garages has direct access to its
> assigned residential unit without requiring the occupants to go outside or use a
> common hallway to access their units.
>
> 9. One of the unique aspects of the Aberdeen condominiums is the way that it can
> occupy a site. Because the garages are on the side of the building and because the
> garages of adjoining buildings face each other, the driveway orientation is quite
> compact, which allows the buildings to be spaced just sixty four feet from each other.
> This allows relatively high density of the units, and an efficiency of infrastructure
> design and implementation, thus allowing significant cost savings for this work.
>
> 10. Another unique aspect of the Aberdeen condominiums is their architectural
> features, including the way that both the front and back of the building are
> architecturally identical, allowing both to have an attractive visual appeal without the
> presence of garages or other elements typical of the back side of multi-family
> buildings.

(Merz Aff. at ¶ 8-10).

---

[4] Supplemental registrations that were filed in October of 2001 to remedy technical
defects in the initial registrations identified the Aberdeen copyrights as derivatives of the
Knollwood plans (Compl. Ex. A., U.S. Copyright Registrations No. VAu 535-027 and VAu 535-
028); *Chirco v. Hampton Ridge, L.L.C.*, No. 01-72015, at 15 (E.D. Mich. Sept. 24, 2002) (Order
Adopting in Part and Denying in Part the Report and Recommendation of the Magistrate Judge).

4

Along with the Knollwood plans and the Aberdeen plans and buildings, the Knollwood buildings also embody this arrangement of space, which is referred to as the "Knollwood building design" (Merz Dep. at 51, 72; Gateway Br. at 4).

In July of 1997, Mayotte granted Plaintiffs an exclusive license for the "use" of the Knollwood and Aberdeen plans. The license agreement stated, however, that "no revisions to the . . . [p]lans or derivative works shall be made by any person other than Mayotte.  If the . . .[p]lans require any modifications from time to time, then upon request by [Plaintiffs], Mayotte shall execute the modifications and shall be compensated on a time and materials basis at Mayotte standard rates. . . ." (Moceri Aff. Ex. A).  In September of 2001, the parties to the original license agreement entered into a confirmatory addendum (*Id.*  at Ex. B; August 6, 2003, Prelim. Inj. Hearing Tr. at 12).  The agreement stated:

> 1. The exclusive rights granted to [Plaintiffs] include the exclusive right to reproduce the . . . [p]lans, to distribute copies of the . . . [p]lans, to make derivative works based on the . . . [p]lans, provided such derivative works are created as set forth in Paragraph 3 of the Agreement, and to use the . . . [p]lans as the basis for any building.

> 2. [Plaintiffs] have the right to sue to enforce any of their exclusive rights under the Agreement.

*Id.*

Plaintiffs have developed numerous condominium projects based upon the Knollwood and Aberdeen plans.  These include Aberdeen Gardens in Sterling Heights, Glenmoor Village in Macomb Township,  Warwick Village in Macomb Township,  Aberdeen Pines in Sterling Heights,  Stratford Village in Sterling Heights,  and Oakmonte in Oakland Township,

At issue in this case is a condominium project commonly known as Gateway Oaks that Defendants developed (Compl. at ¶ 22).  The Plaintiffs' Aberdeen Pines condominium project in

5

Sterling Heights, [5] is adjacent to and surrounds Gateway Oaks (*Id.* ).  Based upon their review of the Gateway Oaks plans filed with the Sterling Heights Building Department, Plaintiffs allege that the Gateway Oaks plans "are substantially similar to, and copy, the Aberdeen [p]lans and . . . [w]orks" (*Id.* at ¶ 24-25).  Plaintiffs, therefore, filed this  action against Defendants for infringement of Plaintiffs' copyrighted Knollwood plans, Aberdeen plans, and Aberdeen buildings (collectively "copyrighted materials") (*Id.* at ¶ 20, 32-33, 36).

Count I of Plaintiffs' complaint sets forth a claim of copyright infringement against Gateway, Arrow, Design, and N & D.  Count II sets forth a claim of copyright infringement, pursuant to principles of vicarious liability, against D'Angelo and Sarafano.  Count III sets forth a claim of copyright infringement, under principles of contributory liability, against MCS, Jones, and Hall.

## II.   PROCEDURAL HISTORY

On August 2, 2002, Plaintiffs filed their complaint and a notice of lis pendens pursuant to Michigan law (Dkt. ##1, 2).  On January 16, 2003, the Court entered an order granting Defendants' motion to cancel Plaintiffs' notice because this case does not deal with the issue of title to real property.  Plaintiffs appealed Judge Borman's order to the Sixth Circuit, which dismissed Plaintiffs' appeal as moot (Dkt. #129).

On August 27, 2002, Defendants Gateway, Arrow, N & D, D'Angelo, and Sarafano filed a Counterclaim against Plaintiffs, seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201,

---

[5] Plaintiffs' complaint does not allege infringement of this copyright; rather, the complaint only pleads infringement of the Knollwood plans, the Aberdeen plans, and the Aberdeen buildings. Moceri confirmed this during his deposition. (Def.'s Prelim. Inj. Resp. Br. Ex. 17, Moceri Dep. at 8, 107-08.)

*et seq.*, declaring the parties' respective rights under copyright law.  On September 11, 2002, Defendants M.C.S. and Jones filed a Counterclaim against Plaintiffs, also seeking a declaratory judgment, under § 2201, declaring the parties' respective rights under copyright law.

On November 22, 2002, Plaintiffs filed a motion for a preliminary injunction (Dkt. #12). On August 28, 2003, the Court issued an opinion and order denying Plaintiffs' motion, reasoning, in part, that a strong likelihood existed that either side could prevail on the ultimate issue of copyright infringement (Dkt. #68, p. 34).  While the opinion denied Plaintiffs' motion, in doing so, Judge Borman addressed, and rejected arguments, challenging Plaintiffs' copyrights. Judge Borman specifically noted that "originality" in Copyright law only required independent creation by the author (i.e. not "copied from other works")  and "some  minimal degree of creativity." (*Id.*  at 13, quoting *Feist Publ'n Inc. v. Rural Tel. Serv. Co.*, 499 U.S.. 340, 345 (1991)).  "The Court concludes that these architectural features, as combined in the architectural plans/works developed by architect Mayotte constitute an overall original arrangement of space capable of copyright protection" (*Id.*  at 12).  After reciting the testimony of plaintiffs' expert, Charles Merz, the Court found that "the architectural plans and works possess more than a minimal degree of creativity" sufficient to satisfy the requirement of originality (*Id.*).[6]  The Court also concluded that there was substantial evidence, which could support a claim for infringement, including a conclusion as to striking similarity (*Id.*  at 32-34).   Nonetheless, Judge Borman held that the evidence was not sufficient to establish the "strong likelihood of success" necessary to support a preliminary injunction.

---

[6]  In this hearing and decision there were no efforts to suggest that the "creativity" found in Mayotte' architectural plans had been copied by him from other preexisting buildings in the area which would undercut any claim to originality in his works.

7

On March 11, 2005, Plaintiffs filed a Re-Filed Motion for Summary Judgment Dismissing Defendants' Affirmative Defense that Construction of the Knollwood Building Turned the Building Design Over to the Public Domain (Dkt. #168).  On March 18, 2005, Defendants Design and Hall each filed a motion for summary judgment on Plaintiffs' claims against them (Dkt. ##173, 174).  Also on March 18, 2005, Defendant Gateway, on behalf of itself and Defendants D'Angelo, Sarafano, Arrow, and N & D, filed a motion for summary judgment on Plaintiffs' claims against them (Dkt. #175).

On April 29, 2005, the Court granted Plaintiffs' re-filed motion as to all of the Defendants except for Design (Dkt. #203).  Applying the law-of-the-case doctrine, the Court rejected the affirmative defense that the Knollwood building design, as embodied in the Knollwood plans, is in the public domain.[7]  The Court held that the Knollwood building design

---

[7] Defendants asserted the following as an affirmative defense:

. . . [T]he copyright registrations that may be asserted . . . are invalid because they and/or their predecessor plans upon which the claimed copyrighted works are based or derived from, were published and/or constructed before December 1, 1990 so that they are excluded works . . .

(Gateway, Arrow, N & D, D'Angelo & Sarafino Affirm. Defenses at ¶ 49; M.C.S. & Jones Affirm. Defenses at ¶ 49).

Defendants in ¶ 53 assert that the "copyright registrations-in-suit are invalid in that they do not cover original, copyrightable works but rather cover unidentified pre-existing works and/or are derivatives of pre-existing works . . ." In ¶ 55 they assert invalidity because the "subject matters are not original with the named author and/or are derivative works of other pre-existing, unidentified works."

In Defendants' earlier December 11, 2002, motion to expedite discovery and postpone the hearing on Plaintiffs' preliminary injunction, Defendants challenged (and apparently wanted time for discovery regarding) Defendants' access to any of the Plaintiffs' copyrighted plans, and further information on any similarity of Defendant Gateway Oaks' plans to "Aberdeen architectural plans"other than the "Aberdeen Village drawings (if these in fact are the drawings

received copyright protection by virtue of the copyright protection of the Knollwood plans, which embodies the building design, as a "pictorial, graphic, or sculptural work" under 17 U.S.C. § 102(a)(5), which separate copyright protection by the AWCPA leaves intact (*Id.* at 14).

On August 26, 2005, this Court entered an Opinion and Order Granting Defendants' Motions for Summary Judgment on Plaintiffs' Claims ("Opinion") (Dkt. #214). The Court rejected most of the Defendants' arguments,[8] with the first 23 of the 28 page opinion reading as though Defendants' motions would be denied.

The Gateway Defendants in their motion for summary judgment asserted the illegality of the Knollwood building design copyright, which issue Plaintiffs conceded (Dkt. #175). The Gateway Defendants' major argument was that the design elements of the Knollwood buildings were in the public domain because 19 such buildings had been built prior to December 1, 1990, when Congress first allowed copyright protection of buildings in addition to drafted plans and other architectural drawings. Defendants argued that if all of these Knollwood design elements

accused of being copied)" (Dkt. #15, at p. ii). While later asking what parts of the Aberdeen architectural plans are original, there is no effort to take discovery of these designs having been copied from other pre-existing buildings or plans, although it is later suggested in Defendants' motion for summary judgment that Mayotte did copy elements of the Knollwood design from the 1966 Glenns of Bloomfield, the 1983/84 Maple Place (allegedly inspected by Mayotte's draftsman, Lanny Galyon, before creating the Knollwood), and/or the 1986 Huntington Park buildings in the area.

[8] Indeed, Plaintiffs' counsel asserts that all of the Defendants' legal arguments, which were formally presented in the motion papers and addressed by the Court, were resolved in Plaintiffs' favor (Dkt. #217). They assert that the issue of originality came up only in the context of the "filtering out" issues mandated by *Kohus v. Mariol,* 328 F.3d. 848, 855 (6th Cir. 2003). This related to the Defendants' defense that there was insufficient circumstantial evidence of copying because their Gateway Oaks design was not "substantially similar" to Plaintiffs' copyrighted plans or buildings.

were filtered out of the copyrighted Aberdeen plans in evaluating what portions of the copyrighted Aberdeen plans were original then there was not a sufficient remaining similarity between the Gateway buildings and the copyrighted Aberdeen Village plans from which to find copying.  This argument that the building of 19 Knollwood units prior to December 1, 1990, placed all of the Knollwood (and thus most of the derivative Aberdeen plans) design elements in the "public domain" had been rejected by this Court in its August 28, 2003, opinion, again in its April 29, 2005, opinion and finally in its August 26, 2005, summary judgment opinion (Dkt. #214, at p. 6, 21- 23).

Defendant Design Group in its summary judgment motion first raised an unsuccessful standing argument (Dkt. #173).  It next asserted, as did the Gateway Defendants as noted above, the futile argument that the "design of a building" in the Knollwood units built before December 1990 were in the public domain requiring dismissal of all of Plaintiffs' claims.  It argued that there was insufficient evidence that the Design Group Defendants copied, and finally that Plaintiffs' claims should be denied because Plaintiffs were misusing copyright claims to prevent others from using public domain material (an argument the Court did not need to address).

Defendants Calvin Hall and his company (the landscape architect firm who had earlier done work for certain of Plaintiffs Moceri and Chirco companies in planning Aberdeen projects sued here for contributory copyright infringement) moved for summary judgment (1.) adopting the other Defendants' argument on not copying of protected material once proper filtering out is undertaking; and (2.) for lack of admissible evidence that any of the Hall defendants induced, caused or materially contributed to any infringing conduct.  Because the Court resolved all motions for summary judgment on lack of originality related to issue (1.), the Court never ruled

on the Hall defense (2.) regarding the adequacy of evidence against them.[9]

Defendants MCS Associates and its vice-president James Jones, the engineering firm for various Aberdeen projects who prepared the master deed for Aberdeen Pines and Aberdeen Gardens and later for Gateway Oaks were sued for contributory copyright infringement.  These Defendants did not file a motion for summary judgment but have moved for $60,845.98 in attorney fees.

While the Court rejected or did not rule on most of the various Defendants' issues in the summary judgment motions, in considering what elements of the Aberdeen plans were original in addressing the "filtering out" the non-original design elements under *Kohus,* the Court found no evidence that the core building plans in controversy ("Knollwood plans" from which the copyrighted Aberdeen plans were derived) were original to Plaintiffs' third party architect ("Mayotte"), who had produced the plans for Plaintiffs.  The Court, noted that originality is "[t]he sine qua non of copyright," *Feist , supra,* 499 U.S. at 345.  This lack of originality defense did not relate to the design in the Knollwood plans not possessing a "minimal degree of creativity,"[10] but apparently to Defendants' assertion that whatever "creative" elements were included had been copied by Plaintiffs' architect Mayotte from one or more of three similar

---

[9]  Plaintiffs do not contest the $891.80 in taxed costs for these Hall Defendants, nor the reasonableness of the $34,094.75 attorney fees if attorney fees are found to be due. (Dkt. #250, p. 2)

[10]  As this Court noted in its August 28, 2003, opinion at p. 13, *Feist* makes clear "the requisite level of creativity is extremely low; even a slight amount will suffice. The vase majority of works make the grade quite easily, as they possess some creative spark , 'no matter how crude, humble or obvious' it might be" *Feist*, 499 U.S. at 345.  The Supreme Court added that originality does not require novelty even if it closely resembles other works, as long as the similarity is fortuitous and not the result of copying.

11

buildings in the area.  Defendants had introduced evidence of three local structures predating the Knollwood plans, which incorporate the purportedly original design elements Defendants were accused of copying, as well as testimony that Plaintiffs' architect  and/or his employee had seen and inspected these structures prior to creating the Knollwood plans.  Plaintiffs, on the other hand, only offered an expert's testimony that he personally had never before seen such a design, while admitting that he could not rule out the existence of other structures evidencing the design elements Plaintiffs had claimed as original to their building plans.  Plaintiffs' expert never directly asked architect Mayotte if the Knollwood plans were original to him.

The Court held that Plaintiffs' expert's testimony was "insufficient to rebut Defendants' evidence of Mayotte's copying that design from at least one of three pre-existing sources" (Dkt. #214, at p. 26-27).  Absent any evidence that the design elements in question originated with Plaintiffs, the Court found that the Knollwood plans were not protected, and that Plaintiffs' claims of infringement could not be sustained.

## III.   ANALYSIS

### A.   Standards Of Review

Title 17 U.S.C. § 505 permits a court in copyright cases to award fees in its discretion to prevailing parties. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 522 (1994); *Winfield Collection Ltd. v. Germany Indust. Corp.*, 311 F. Supp. 521, 523 (E.D. Mich. 1994); *Jackson v. Axton*, 25 F.3d 884 (9th Cir. 1994).  The court in *Jackson* held that in determining whether to grant attorney fees under the Copyright Act a court should exercise equitable discretion in light of the degree of success obtained, frivolousness, motivation, objective reasonableness of both factual and legal arguments, and the need in particular circumstances to advance considerations of compensation

and deterrence.  In *Design v. K-Mart Apparel Corp.*, 13 F.3d 559 (2nd Cir. 2004), the court held

that the award of attorney fees to prevailing plaintiffs in copyright infringement action remains

discretionary with the court. *See also Nash v. CBS, Inc.*, 750 F. Supp. 328 (N.D. Ill, 1990).

In civil rights cases, plaintiffs who prevail on a constitutional or non-constitutional

statutory claim are entitled to attorney fees. *Christianberg Garment v. EEOC*, 434 U.S. 412

(1978).  Yet, prevailing civil rights defendants are entitled to an award only if plaintiff's action

was "frivolous, malicious, or without foundation." *Christianberg*, 434 U.S. at 421. The Supreme

Court in *Fogerty* distinguished fee awards in copyright actions from those in civil rights cases by

removing the differential approach between plaintiffs and defendants and treating prevailing

defendants and plaintiffs alike. *Fogerty*, 510 U.S. at 534.

Moreover, the Supreme Court's opinion in *Fogerty* expressly refused to import the

"British Rule," that fees should be awarded "as a matter of course, absent exceptional

circumstances," into the Copyright Act.  *Fogerty*, 510 U.S. at 533.  In exercising this discretion,

courts must consider the non-movant's motivation in pursuing the action, the frivolousness or

objective unreasonableness (either factually or legally) of their argument, compensation and

deterrence. *Fogerty*, 510 U.S. at 534 n. 19.  *See also Coles v. Wonder*, 283 F.3d 798, 804 (6th Cir.

2002) ("Such fees are subject to the discretion of the trial court and should be based upon the

factors listed in the district court's order, such as frivolousness of the claim, motivation,

reasonableness, and deterrence."); *Murray Hill Publ'ns, Inc. v. ABC Communications*, 264 F.3d

622, 639 (6th Cir. 2001); *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994); *Diamond Star

Building Corp. v. Freed*, 30 F.3d 503, 505 (4th Cir. 1994).

The law clearly prohibits granting attorneys fees to Defendants "simply because they

were granted a summary judgment." *Gordon v. Nextel Communications, Inc.*, 2001 U.S. Dist.

LEXIS 25049 (E.D. Mich. 2001). As the Sixth Circuit later explained in *Bridgeport Music, Inc.*

*v. Rhyme Syndicate Music*, 376 F.3d 615, 626-627 (6th Cir. 2004):

> This is consistent with the view from other circuits that it generally does not promote
> the purposes of the Copyright Act to award attorney fees to a prevailing defendant
> when the plaintiff has advanced a reasonable, yet unsuccessful claim. See *Matthew*
> *Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2nd Cir. 2001); *Lotus Dev.*
> *Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir. 1998) (In close infringement
> cases, "the need to encourage meritorious defenses is a factor that a district court
> may balance against the potentially chilling effect of imposing a large fee award on
> a plaintiff[ ] who ... may have advanced a reasonable, albeit unsuccessful, claim.").

## B.   Factual Analysis

In making its determinations, it is therefore proper for the Court to consider the following

factors as outlined in *Fogarty* and *Jackson*: the degree of success obtained, frivolousness,

motivation, objective reasonableness of both factual and legal arguments, and the need in

particular circumstances to advance considerations of compensation and deterrence.

### 1.   The Degree of Success and Reasonableness of Plaintiffs' Arguments.

Defendants argue that Plaintiffs have been unsuccessful in virtually every aspect of this

litigation. They contend that Plaintiffs suffered the following loses: (1) Judge Borman's Order

cancelling Plaintiffs' notice of lis pendens, which was affirmed by the Sixth Circuit (Dkt.

#129)[11], (2) Judge Borman's denial of Plaintiffs' Motion for Preliminary Injunction (Dkt. #68),

and (3) Judge Borman's granting of all Defendants' motions for summary judgment (Dkt. #214).

Yet, on closer review of each decision, apart from the issue of originality in the Court's August

2005 opinion, an issue on which Plaintiffs believe they had earlier prevailed but later lost,

---

[11] To be precise, the Sixth Circuit held that Plaintiffs' appeal was dismissed as moot (Dkt.
#129).

Plaintiffs' positions on most other issues were largely adopted by this Court in its various opinions.

In Judge Borman's order denying Plaintiffs' Motion for Preliminary Injunction, when comparing Defendants' works to those of Plaintiffs', the Court held that "the overall arrangement of space is strikingly similar" (Dkt. #68, p. 32). The Court also rejected Defendants' arguments that Plaintiffs lacked standing (*Id.* at 7), and refused to adopt Defendants' theory that construction of the Knollwood building destroyed the protection in the designs (*Id.* at 24).[12] In his August 28, 2003, opinion Judge Borman specifically "reject[ed] the Defendants' contention that only the new features in the Aberdeen Village architectural plans and works are subject to copyright protection in this case (*Id.* at 25). Perhaps, most importantly, "the Court conclude[d] that these architectural features, as combined in the architectural plans/works developed by [Plaintiffs'] architect Mayotte constitute an overall original arrangement of space capable of copyright protection" (*Id.* at 12). As noted above, citing the testimony of Plaintiffs' expert, Charles Merz, the Court found that the design satisfied the requirement of originality (*Id.* at 13).

Moreover, while Judge Borman ultimately granted Defendants' motions for summary judgement, a substantial part of his August 26, 2005, opinion adopted several of Plaintiffs' arguments (Dkt. #214). Often citing his August 28, 2003, order, Judge Borman reasserted his

---

[12] Similarly, in Judge Borman's April 29, 2005, order granting Plaintiffs' re-filed motion as to all of the Defendants except for Design (Dkt. #203), the Court rejected the affirmative defense that the Knollwood building design, as embodied in the Knollwood plans, is in the public domain. The Court held that the Knollwood building design received copyright protection by virtue of the copyright protection of the Knollwood plans, which embodies the building design, as a "pictorial, graphic, or sculptural work" under 17 U.S.C. § 102(a)(5), which separate copyright protection by the AWCPA leaves intact (*Id.* at 14).

findings that Plaintiffs had standing to bring their claims, that Plaintiffs demonstrated a

substantial similarity between Defendants' works and Plaintiffs', and that Plaintiffs "created an

issue of fact as to whether Defendants had access to the Knollwood building design, as embodied

in the Knollwood plans and their derivative works" (*Id.* at 16).  Citing the Court's April 29,

2005, decision, Judge Borman also reiterated that the Knollwood building design received

copyright protection by virtue of the copyright protection of the Knollwood plans, which

embodies the building design, as a "pictorial, graphic, or sculptural work" under 17 U.S.C. §

102(a)(5), which separate copyright protection by the AWCPA leaves intact.


The sole issue upon which Plaintiffs ultimately lost concerned the matter of originality

and the unrebutted suggestion that Mayotte had copied the design for Knollwood.  Plaintiffs'

claims failed against all Defendants because the Court determined that Plaintiffs' expert's

testimony was "insufficient to rebut Defendants' evidence of Mayotte's copying that design from

at least one of three pre-existing sources." (*Id.*  at 26-27).  Believing that there was inadequate

evidence that the design elements in question originated with Plaintiffs' architect Mayotte, the

Court found that the Knollwood plans were not protected, and that Plaintiffs' claims of

infringement could not be sustained.

Yet, the issue of originality was not raised for the first time in Defendants' motions for

summary judgement.  Indeed, originality was raised in previous filings and discussed by the

Court in its August 28, 2003, opinion, albeit then dealing with the creativity element of

originality, and not a claim that Mayotte had copied the Knollwood design from one or more

neighboring building.  As noted above, on the issue of creativity, the Court stated in its order

16

denying Plaintiffs' motion for a preliminary injunction that the "overall combination of features, taken as a whole, constituted an original arrangement of space."

While Judge Borman noted in his August 26, 2005, opinion, that the issue of whether that arrangement of space was original to Mayotte was not before the Court at the time of his August 28, 2003, decision, the Court's diametrically different discussions and conclusions reached in each decision, at minimum, lead credence to a finding that Plaintiffs did not advance an objectively unreasonable or frivolous claim. Indeed, in *Gordon*, the Court held that "the closeness of the issue . . . undermines the argument that plaintiff's claims were objectively unreasonable." *Gordon*, 2001 U.S. Dist. LEXIS at 6. And where a plaintiff's action "was not frivolous," this District has held the imposition of costs and fees is not warranted under the Copyright Act. *Quinn v. City of Detroit*, 23 F. Supp. 2d 741 (E.D. Mich. 1998).

If the "copying" aspect of Mayotte' Knollwood design from one or more of three neighboring buildings was so obvious as to make Plaintiffs' argument of originality and copyright protection of the Knollwood and its derivative designs "objectively unreasonable," one might ask why Defendants had: (1) not been more specific about it in their answers and counterclaims; (2) not briefed and argued this on the multiple earlier occasions; and (3) not framed it more prominently and clearly than the few paragraphs on "filtering out" made in the summary judgment motion. If all of the Knollwood/Aberdeen copyrights were so obviously invalid because Mayotte copied the Knollwood design, why not take a "direct road to Rome" instead of wasting so much of this Court's time? Why not argue this core defense under a claim that all of Plaintiffs' copyrights are invalid because of lack of originality due to ***Plaintiffs' copying,*** and not bury it in a defense that there is lack of sufficient circumstantial evidence of

17

*Defendants copying* because when all non-original elements are "filtered out" there is no proof of substantial similarity?  In a case such as this where the "winning" theory comes late nearly as an afterthought on a different "substantial similarity" filtering out argument, it cannot readily be said that Plaintiffs' copyright claims based on registered copyrights were "objectively unreasonable."[13]

### 2.    *Motivation and the Need for Deterrence*

Defendants raise a number of claims that Plaintiffs were motivated by bad faith in bringing this cause of action and that attorney fees and costs should be awarded to deter future actions of this type.  Specifically, Defendants argue that Plaintiffs' claims were "motivated by their desire to monopolize on ideas which are not protectable by Copyright Law" (Dkt. #219, p. 8).  Yet, the Court, in its August 28, 2003, opinion clearly rejected such an assertion.  As the Court reasoned, in pertinent part:

> . . . Plaintiffs do not seek a monopoly in the individual ideas contained in their copyrighted architectural plans and works. Instead, . . . [they seek] to protect the original expression of these architectural features in the combined arrangement of space expressed in the copyrighted material . . . . This protection, therefore, would not prevent a third-party, such as the Defendants in this case, from independently creating their own architectural plans based upon general abstract ideas circulating in the architectural community (such as locating single car garages on each side of a building so [that] each occupant will have direct access to their own garage). Instead, copyright protection of the architectural plans (expression) merely prohibits a third-party, as Plaintiffs allege in this case, from simply copying another's copyrighted original expression in order to avoid the time and expense of

---

[13]  Regarding the other summary judgment claims of the Hall Defendants or the other defense theories of the  M.C.S. Associates/Jones Defendants in their Answer, the Court did not make any rulings on those defense theories so is it not clear whether they are "prevailing parties" on those defenses.  There is a limited basis in the present record on which to determine whether the Plaintiffs' litigation postures regarding them are "objectively unreasonable" and to make such a determination on the present motions would convert a motion for attorney fees into a surrogate motion for summary judgment on claims not adjudicated.

18

independently creating their own original expression based upon abstract ideas.
(Dkt. #68, pp. 16-17).

Defendants assert further that Plaintiffs' motivation in bringing suit against Defendants is "clearly meant to terrorize the building community into not making any 12-plex condominiums that incorporate ideas and concepts that are similar to the Knollwood design." (Dkt. #219, p. 8). In support of their contention, Defendants list the following cases that Plaintiffs have brought against parties in Michigan asserting the same copyrights:

1. *Chirco v. Cobblestone Ridge*, No. 97-60283 (Hackett, J.).

2. *Chirco v. S.R. Acquisitions*, No. 00-73390 (Steeh, J.).

3. *Chirco v. Charter Oaks*, No. 01-71403, (Hood, J.).

4. *Chirco v. Hampton Ridge*, No. 01-72015 (Roberts, J.).

5. *Chirco v. Balsamo Olson Lewis*, No. 02-70485 (Roberts, J.).

6. *Chirco v. Gateway Oaks*, LLC, No. 02-73188 (Borman, J.).

7. *Chirco v. Rosewood Village LLC*, No. 03-72145 (Hood, J.)

8. *Chirco v. Crosswinds*, No. 03-74600 (Hood, J.)

Yet, only one of these cases has proceeded to trial and the actions of the parties and the court in each case have produced mixed results, which fail to confirm Plaintiffs have acted in bad faith in the present action.[14]  In *S.R. Acquisitions, Hampton Ridge* and *Cobblestone Ridge,* the

---

[14] In *Charter Oaks*, a jury trial was held where copy infringement was alleged on the same copyrights pertaining to the instant case.  Using a special verdict form, the jury found that one of the copyrights asserted by Plaintiffs was invalid, and that the Charter Oak accused plans and building did not infringe the remaining two copyrights.  While such an outcome, might indicate to Plaintiffs that future filed lawsuits may be unsuccessful and thus a waste of the parties' and court's resources and time, the *Charter Oaks* decision, by itself, does not show that Plaintiffs acted improperly in the present matter.  Having originally filed their complaint in the

19

parties all settled prior to trial.[15]   In the *Rosewood* case, Judge Hood originally adopted the report and recommendation by Magistrate Judge Morgan granting defendants in that case summary judgement, however, Judge Hood later granted Plaintiffs' motion for reconsideration having found sufficient questions of fact and subsequently denied defendants' motion for summary judgement.   In *Crosswinds*, Judge Hood issued a March 31, 2005, opinion granting defendants' motion for summary judgement and dismissing the case based on the equitable defense of laches. Yet, on January 10, 2007, the Sixth Circuit issued its Opinion and Order reversing the dismissal and remanding the case for clarification of the nature of the relief sought and for such further proceedings as appropriate.   *Chirco v. Crosswinds Communities, Inc.,* Case No 05-1715, 6th Cir. January 10, 2007). (Dkt. #263).

In sum, there is no direct evidence that Plaintiffs have marshaled arguments in this District or in this case that are either frivolous or motivated by bad faith.   A consideration of the factors outlined in *Fogarty* and *Jackson*, including a consideration, in particular, of the key court decisions in this case adopting many of Plaintiffs' positions, suggests that this is not a case where Plaintiffs' claims were brought in bad faith, were frivolous, or legally or factually unreasonable, even though they were ultimately dismissed by this Court.   Therefore, an award of

---

instant matter in October 2002, there is no way Plaintiffs could have known they would ultimately be unsuccessful in a separate case in which a October 11, 2006, final judgement was entered.

[15] In *Hampton Ridge*, defendants were represented by Gateway's current attorneys.   In a September 24, 2002, opinion, issues prior to settlement, Judge Roberts rejected defendants' attacks on the validity of the subject copyrights, rejected attacks on Plaintiffs' claims of ownership of the copyrights and held that public availability of the designs established sufficient access to preclude summary judgment of no access.

attorney fees is not warranted and Defendants' present motions are hereby **DENIED.**

## IV.    ORDER AND SUGGESTED MODIFICATION OF THE PERIOD OF TIME FOR OBJECTIONS

For the reasons stated above, **IT IS ORDERED** that Defendants' motions for attorney fees

are **DENIED**.  The Hall Defendants' request for taxable costs is resolved by a separate order

entered on March 20, 2007.  Those costs and the taxable costs, other than attorney fees, of all

other Defendants are not affected by this order and may be taxed by the clerk in accordance with

Fed. R. Civ. P. 54(d)(1).

### SUGGESTED MODIFICATION OF THE PERIOD OF TIME FOR OBJECTIONS

Ordinarily the parties to this action may object to and seek review of this Order, but are

required to file any objections within ten (10) days of service of a copy hereof as provided for in

28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Any objections are required to specify the

part of the Order to which the party objects and state the basis of the objection.  Pursuant to E.D.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing

party may file a response.  The response shall be not more than twenty (20) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.

Yet, because this matter is pending in the Sixth Circuit, it is recommended to the parties,

and it is hereby approved by the Court, that the period for objections to this opinion be deferred

until 10 days after the Sixth Circuit decides the appeal.  If there is an affirmance by the Court of

Appeals, this will likely provide binding legal analysis informative on the issue of "objective

reasonableness" or lack thereof.  If there is a reversal, some or all of the Defendants will lose

21

their status as "prevailing parties" providing a new ground for denial of attorney fees.

   The parties in the action have expended much time and effort – often on what appeared to be repeated issues.  In the recent *Chirco v. Crosswinds Communities, Inc.,* the issue of attorney fees was briefed and argued, then it was analyzed by Magistrate Judge Morgan, the parties spent further time and effort filing objections and defenses on the issue, and then Judge Hood entered an order on the matter granting attorney fees, only to have all of that effort undermined and wasted when the Sixth Circuit reversed the case on limited issues.  To avoid such possible waste of the resources of the parties and of the Court in this case, it is urged that the parties agree to preserving the period to object to the opinion and order until 10 days after the Sixth Circuit issues its decision on this matter.  Out of respect to the parties, this opinion is not ordering this extension of the period to object, but merely approving it if agreed to by the parties.  Counsel for Plaintiffs shall take the lead in conferring with the Defendants' counsel on this proposed extension and upon preparing a suitable stipulation of the parties for my signature if all concur.


SO ORDERED.

Dated: March 22, 2007                                    s/Steven D. Pepe
Ann Arbor, Michigan                                      United States Magistrate Judge

22

## CERTIFICATE OF SERVICE

I hereby certify that on <u>March 22, 2007</u>, I electronically filed the foregoing paper with the Clerk  Court using the ECF system which will send electronic notification to the following: <u>Joseph G. Burgess, Bernard J. Cantor, Julie A. Greenberg, Melanie T. LaFave, Douglas P. LaLone, James J. Parks, Robert J. Pineau, Douglas W. Sprinkle, Wayne E. Walker, Aaron L. Warren, Stephen F. Wasinger</u>, and I hereby certify that I have mailed United States Postal Service the paper to the following non-ECF participants:<u> John W. Griffin, 380 N. Old Woodward Ave., Ste. 350, Birmingham, MI 48009</u>

<u>s/ James P. Peltier</u>
James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church St.
Flint, MI 48502
810-341-7850
pete__peliter@mied.uscourts.gov